NORTH POINT CONSOLIDATED IRRIGATION COM-
PANY, APPELLANT, *v.* UTAH & SALT LAKE
CANAL COMPANY ET AL., RESPONDENTS.

1. *Construction of Charter of Irrigation Corporations.*

The plaintiff claimed the right to receive water through the Sur-
plus canal, owned by a corporation, and that its purposes were
irrigation and drainage, while the defendants claimed its pur-
pose was to carry seepage water from lands irrigated by them
through their drain ditches, though unfit for irrigation, as
well as other drainage water, and introduced witnesses to state
their understanding of its purpose. *Held,* that the purpose of
the canal, and the powers the corporation was authorized to
exercise, must be determined from its charter, not from the
opinions of witnesses.

2. *Articles of Incorporation—Their Purposes—Uses to which their
Property may be put.*

Articles of incorporation under the general law of the state, with
the provisions defining their effect, constitute the charter of a
corporation, and from them the purposes of the corporation,
and the uses to which its property may be put, must be ascer-
tained and limited.

3. *Drainage and Irrigation Canals—Their use.*

Two purposes are enumerated in the charter of the Surplus Canal
Company: (1) The diversion of a portion of the water of the
Jordan river to prevent the overflow of adjacent lands; (2)
irrigation and cultivation of lands. To these ends, the con-
struction and maintenance of dams, head gates, flumes, and
other necessary means to control, regulate, and distribute the
waters of the canal, are authorized. The enumeration of these
two purposes implies the exclusion of all others, and forbids
the use of the canal for drainage to the exclusion of its use for
irrigation, or for irrigation to the exclusion of its use for drain-
age. The use of it for the drainage of water unfit for irriga-
tion excludes the use of its waters for irrigation or domestic
purposes. Therefore the drainage of water through it, unfit
for irrigation, is excluded.

4. *Canal Company—May Grant use of its Canal or Water.*

Having the power to use its canal for irrigation as well as drainage, the Surplus Canal Company could grant to the plaintiff the right to take water through or from the canal for irrigation, and to construct gates and dams to divert it.

5. *Canal Company—Contract—Ratification.*

A corporation may ratify a contract which it had the power to make, when entered into on its behalf without its authority, or voidable because not reduced to writing.

6. *Contract with Corporation by Wrong Name—When Valid.*

Though a corporation may enter into a contract by a wrong name, it will be binding when it appears that such corporation was intended.

7. *Upper Proprietors—Drainage.*

The owners of higher lands are entitled to the benefit of the natural flow of water therefrom onto lower lands owned by others, when not brought there by artificial means, but they are not entitled to the natural flow of seepage water from irrigated lands. Nor can they lawfully gather water on their lands in artificial drains, whether brought there by human or natural means, and discharge it onto the lands of others.

8. *Seepage and Surplus Water—Right of Drainage.*

Defendants could not lawfully conduct seepage or surplus water from lands irrigated by them, through drains and lakes, into the Surplus canal, from which plaintiff had a right to take water for irrigation and domestic purposes, to its injury. The defendants were required to control the seepage and surplus water from lands irrigated by them so as not to injuriously affect the rights of others.

9. *Artificial Drainage.*

Though Decker's lake might overflow its rim during freshets, and a portion of its waters might find its way at such times into the canal from which plaintiff had a right to take irrigation water, the defendant had no right to cut a drain through its rim, and conduct water that would have remained in the lake into the canal.

10. *Prescriptive Right—Adverse User—Necessary.*

The drainage of pure water into the Surplus canal was not inconsistent with plaintiff's right to use its waters for irrigation and domestic purposes; but, as soon as such drainage rendered the

waters of the canal unfit for irrigation or domestic purposes, the 20-years user necessary to gain a right by prescription began to run.

11. *Right by Prescription—Essential Fact.*

When the adverse use of an easement is substantially the same as the adverse use that will give title to land under the statute of limitations, a right to the easement will be gained by pre- scription. But in such case the facts essential to establish the right to land under the statute of limitations must exist, to sustain the right to an easement by prescription. The facts upon which defendants base their claim to flow befou'ed waters through the Surplus canal are not analogous to those essential to title under the statute of limitations. Nor are they analogous to those required to exist to give a right to the use of water under section 2780, Comp. Laws Utah 1888.

12. *Private Nuisance.*

Under section 3463, Comp. Laws Utah, the mixing of impure water with water used for irrigation and domestic purposes, which renders it unfit for such use, causes a nuisance; and a prescriptive right to maintain a private nuisance must be adverse, under a claim of right, uninterrupted and continuous for 20 years, with the knowledge and acquiescence of the party whose right is invaded.

13. *Prescription—Public Nuisance.*

The befouling of the waters of a canal from which a number of persons (more than three) obtained water for irrigation, culin- ary, and other domestic purposes, so that it is unfit for use, creates a public nuisance, under section 4566, Comp. Laws Utah 1888, and the right to maintain it cannot be gained by prescription.

14. *Appeal in Equity Cases—Findings of Fact.*

In equity cases, in which there has been an appeal on questions of fact as well as on questions of law, the court may go behind the findings, and weigh all the evidence, and decide according to its preponderance. It is only when the evidence as to a fact found to exist, or not to exist, is so evenly balanced, or the proof is so unsatisfactory, as to cause the mind to hesitate and pause as to the side on which it preponderates, and leave the court in serious doubt, that the appellate court will be bound by the findings of the trial court.

(No. 857.   Decided Feb. 5, 1898.)

Appeal from the Third district court, Salt Lake county. A. G. Norrell, *Judge.*

Suit by the North Point Consolidated Irrigation Company against the Utah & Salt Lake Canal Company and others for damages, and an injunction restraining defendants from discharging befouled water into a certain canal, and to compel them to fill up certain ditches. There was a decree for defendants, and plaintiff appeals. Reversed and remanded, with directions.

On March 9, 1897, the plaintiff filed a complaint in the district court, in which it was alleged, among other things, that prior to May 19, 1886, there existed an unincorporated association known as the North Point Canal Company, owning and using an irrigation ditch (describing it); that this association on February 27, 1886, secured, for a valuable consideration, a right to take water from and through a canal known as the " Salt Lake Surplus-Water Canal," for the purpose of irrigation; that afterwards, on May 19, 1886, it became incorporated under the name of the North Point Irrigation Company, and as such incorporation received a written grant from the Salt Lake Surplus-Water Canal Company on December 9, 1886, in compliance with the agreement made with the North Point Canal Company in the preceding February; that on August 15, 1889, the North Point Irrigation Company consolidated with the West Point Canal Company, another corporation, whereby the plaintiff corporation was formed; that the North Point Canal Company having obtained the right to take water, as alleged, for irrigation purposes, from and through the Salt Lake Surplus Canal Company, the North Point Irrigation Company succeeded to those rights upon its incorporation, and took possession thereof. The plaintiff also alleged that the defendants the Utah & Salt Lake Canal

Company, the South Jordan Canal Company, and the North Jordan Irrigation Company each owns and operates a system of canals or water ditches to the south and west of the plaintiff's canals, and on higher ground, through which they take water from the river Jordan for the purpose of irrigating the lands lying below them; that the country through which they extend, and the land they irrigate, is in many places strongly impregnated with alkali and other mineral substances, which render the drainage water from it wholly unfitted for use for any culinary, stock, or irrigation purposes; that these canal companies have been accustomed to take out from the river Jordan large quantities of water in excess of what was used for the proper irrigation of the lands irrigated from it, and have turned upon them large quantities of waste water, which saturates the alkaline and mineralized lands; that this excessive use of irrigating waters, after percolating through and draining such mineralized lands, forms a chain of several small lakes or ponds and sloughs; that in order to relieve them, as well as the lands submerged by and adjacent thereto, the defendant canal companies constructed and maintained a series of artificial channels, connecting each and all of these several lakes or ponds and sloughs with a lake known as "Decker's Lake," by which they drain large quantities of strongly mineralized and saline waste and seepage waters into said Decker's Lake, and which is wholly unfit for irrigation or culinary use, and is destructive to all vegetable growth with which it comes in contact; that the three defendant canal companies, instead of draining such surplus and seepage water back into the Jordan river, the natural source from which they take their water, constructed about four years prior to the commencement of this action a large artificial drain ditch from Decker's Lake to the Surplus canal, through

which the plaintiff receives its water for irrigation, culinary and other domestic purposes; and that they still continue to drain said seepage, mineralized, and alkali water into such Surplus canal, above the point where the plaintiff takes its water, rendering the same unfit for use, to the great and irreparable injury and damage of the plaintiff. The complaint concludes with a prayer for a writ of injunction restraining each and all of the defendants from discharging such seepage, surplus, impure, and [befouled water into said Surplus-Water canal, or into plaintiff's canal, ditch, or ditches, and for an order to fill up such drain, ditch, or ditches as conduct said waters into said Surplus canal or White lake, which is a part of said Surplus canal. The complaint also contains a prayer for damages, and a general prayer for relief. The defendant canal companies filed their answer, in which they deny the allegations of plaintiff's complaint, and by way of defense allege, among other things, the following: That the defendants' canals are built on high ground, and that the contour of the lands lying adjacent thereto has caused the water to seep into holes and low places below, forming ponds and lakes; that, for the purpose of carrying off this surplus water, the defendant canal companies constructed ditches to convey the same into White lake, which is a part of the Jordan & Salt Lake Surplus canal; that said ditches were constructed in May, 1886, and have since been maintained for that purpose; that the natural drainage from Decker's lake and the other lakes mentioned in plaintiff's complaint is into White lake; that in 1886 said water was discharged into said White lake and Surplus canal by reason of the construction of the said ditches, and at that time plaintiff had no right, title, or interest in the Surplus canal, or the waters flowing into it; that they have a right by prescription. And they also rely upon

the statute of limitations. The answers of the city of Salt Lake and the county of Salt Lake are similar to that of the canal companies, so far as they consist of denials.

It appears from the evidence on the trial found in the record: That the Jordan & Salt Lake Surplus-Water Canal Company was incorporated on the 9th day of March, 1885. That its object and purpose, as expressed in its articles, were "to construct and manage a canal from a point [ described ] on the west bank of the Jordan river, * * * in a northwesterly direction, * * * to Salt Lake (a distance of about ten miles), for the purpose of diverting a portion of the water of the river from its channel, and causing it to flow into the lake at a point designated" on its beach; to prevent "the western portion of Salt Lake City, and the lands along the Jordan river, from being submerged in times of high water; and to make practicable the drainage, irrigation, and cultivation of large tracts of land hitherto unavailable for agricultural purposes, and to that end to construct and maintain all necessary dams, head gates, flumes, and other means necessary to control, regulate, and distribute water for the purposes mentioned." That the company commenced the construction of its canal between the points named in 1885, and completed it in the spring of 1886, at a cost of $19,000, contributed by Salt Lake county, Salt Lake City, and private persons. It also appears that the North Point Canal Company, an unincorporated association, at the same time owned a canal; that on the 27th day of February, 1886, its members held a meeting, and appointed two committees, one to prepare articles of incorporation, and the other to negotiate with the Jordan & Salt Lake Surplus-Water Canal Company to obtain the right to connect with its canal, and to take water therefrom for irrigation, culinary, and other domestic purposes; that at the same

meeting they determined to repair their canal and build a new one the distance of one mile, in order to make such connection; that the Jordan & Salt Lake Surplus-Water Company agreed that the North Point Company might connect with its canal, and take water therefrom for such irrigation and domestic purposes; that later the company ratified the action of its committee; that the committee appointed to prepare articles of incorporation reported them to the company at a meeting held on May 17, 1886, and the members of the unincorporated company two days later duly incorporated the North Point Irrigation Company. Of these articles, 3 and 5 are as follows: " Art. 3. The object and pursuit of business shall be to provide for the irrigating of agricultural lands, and provide water for culinary and other purposes within the precinct of North Point, Salt Lake county, through the now existing so-called Salt Lake Surplus canal and the North Point canal, and such other as hereafter may be constructed by this association; to manage and control its legitimate proportion of the waters of the river Jordan; to construct and maintain all necessary dams, head gates, weirs, flumes, pipes, or other means that may hereafter be considered necessary to carry out the objects of this association." " Art. 5. The capital stock of this association shall consist of the several interests of the corporations hereof in the North Point Canal Company, together with the water rights thereto through the Surplus canal from the river Jordan as they now exist and appear of record in the office of the secretary of the North Point irrigation district of Salt Lake county, Utah territory [names of incorporators omitted], and the same be, and is hereby, transferred and made to represent the capital stock of this association, and declared fully paid up, and subject to assessment by the association from time to time, as may be required."

It also appears that the members of the North Point Canal Company and the stockholders of the North Point Irrigation Company, relying upon the agreement that the North Point Canal Company, and its successor, the North Point Irrigation Company, might take water, from and through the Surplus canal, from the Jordan river, for domestic and irrigating purposes, constructed a new canal a distance of one mile, connecting the two canals, at a large expenditure of time and money; that they also contributed a considerable sum to the building of the Surplus canal. It also appears: That the canal of the North Point Canal Company, and its property, and the interest of the members in the unincorporated association, were transferred and passed to the North Point Irrigation Company, and became a part of its capital stock. That on the 9th day of December, 1886, a written contract was entered into between the Jordan & Salt Lake Surplus-Water Canal Company and the North Point Irrigation Company, in the following language: "Agreement between Surplus Canal Company and North Point Canal Company, Salt Lake City, 1886. Know All Men by These Presents: That, whereas, at a meeting of the board of directors of the Jordan and Salt Lake Surplus-Water Canal Company, held in Salt Lake City on the 27th day of February, 1886, the privilege to take water from the said Jordan and Salt Lake Surplus-Water Canal Company by the North Point Canal Company was granted on condition that the said North Point Canal Company assist materially in the construction of the said Jordan and Salt Lake Surplus-Water canal; and whereas, the said North Point Canal Company, by its stockholders in and landowners under the said North Point canal, have contributed the sum of $600 (six hundred dollars) to the construction of said Jordan and Salt Lake Surplus-Water canal, the receipt whereof is hereby ac-

knowledged,—the North Point Canal Company is hereby granted the privilege to take water from said Surplus canal at a point a little north of the county bridge constructed across said Surplus canal at a point where Third South Street, of Salt Lake City, produced westward, crosses said Surplus canal, subject only to the following conditions: (1) No obstruction injuriously affecting the flow of water shall be put in the Surplus canal during the time of high water. (2) During the times of low water the North Point Canal Company may hold the water in the Surplus canal at a point two (2) feet above the present grade line of the Jordan and Salt Lake Surplus-Water canal. (3) The size of the overflow of the gate, dam, or flume placed in the Jordan and Salt Lake Surplus-Water canal by the North Point Canal Company shall be two (2) feet below the present grade line of the Jordan and Salt Lake Surplus-Water canal. In witness whereof, the said parties have hereunto caused their corporate seal to be affixed, and these presents to be subscribed by their vice president, this 9th day of December, A. D. 1886. T. E. Jerremy, Jr., Vice President Jordan and Salt Lake Surplus Canal Co. Witness: N. W. Clayton. Attest: George Q. Cannon, Secretary." In this agreement the name of the North Point Canal Company was, by mistake, used in the place of its successor, North Point Irrigation Company. That the intention of both parties was to make the grant to the last-named company, to whom the instrument was delivered, and who duly filed it for record on December 9, 1886.

It appears further that the Jordan & Salt Lake Surplus-Water Canal Company transferred, by deed bearing date December 13, 1886, its canal to Salt Lake City and Salt Lake county, in the following language: " *   *   * And whereas, the said city and county have signified their

willingness to take control and management of said canal, and to operate the same for the uses and purposes for which it was constructed, and thereby relieve this company from further expense or liability arising from the operation and management of the same: Now, therefore, in consideration of $12,000 paid by said city and county of Salt Lake, and of the further consideration that said city and county will covenant to keep said canal open and free to accomplish the purposes for which it was constructed during the period of ten years from date hereof, we, the stockholders of said company, hereby signify our willingness to relinquish all our right, title, and interest in and to said canal to said city and county, to be by them held and operated for the uses and purposes aforesaid; and we authorize and direct the proper officers of this corporation to make, execute, and deliver to said county and city, jointly, a good and sufficient deed. [ Then follow the conveyance and description. ] Conditioned, however, that the parties of the second part, Salt Lake City and Salt Lake county, keep said canal open and free to accomplish the purposes for which it was constructed for the period of ten years from the date hereof." It also appears that the North Point Consolidated Irrigation Company, the plaintiff, was incorporated on August 15, 1889, and that the canal of the North Point Irrigation Company, and all its franchises, and interests in its property, were then transferred to the plaintiff. The seventh article of plaintiff's charter is as follows: " Art. 7. This corporation is organized for the purpose of owning and acquiring, making, building, and maintaining irrigation canals and ditches in the county of Salt Lake, territory of Utah, to provide for irrigating agricultural land; to provide for irrigation, culinary, and other purposes through the canals and ditches now controlled by the North Point Irrigation

Company and the West Point Canal Company, the so-called Surplus canal, and such other canals and ditches as may be hereafter constructed or acquired by this corporation; to manage and control its legitimate proportion of the waters of the river Jordan, and to construct, own, maintain, and control all necessary dams, head gates, weirs, flumes, pipes, or any other means necessary to carry out the purposes of this organization; to acquire all the cash on hand, rights, privileges, franchises, choses in action, accounts, deeds, liens, leases, good will, money due, books and papers, and all property of every nature, now owned, enjoyed, controlled, or possessed by the North Point Irrigation Company and the West Point Canal Company. It being expressly intended hereby to consolidate said last-named companies, and to merge them into this corporation." It appears further that large tracts of land owned by the stockholders of the plaintiff and others depend for irrigation upon its canal; that after it was connected with the Surplus canal, up to 1892, its waters were used for irrigation and domestic purposes; that some of the land would be productive and valuable if irrigated with water suitable for irrigation, such as is taken from the Jordan river; that other portions contain alkali, that renders it unsuitable for growing crops, but that it would be improved through irrigation with pure water. It appears: That the plaintiff's canal connects with the Surplus canal about four miles below its mouth at the Jordan river. That above that portion of the Surplus canal, and, to the south and west, the canals of the defendants the Utah & Salt Lake Canal Company, the South Jordan Canal Company, and the North Jordan Irrigation Company, are situated. That these canals take water from the Jordan river miles above the head or mouth of the Surplus canal, —one as much as 17. That drain ditches were constructed

16 UTAH—17

and are used further up the river to carry the seepage from the lands irrigated back to the Jordan river, but the seepage from large tracts of land irrigated by water from these canals flows into Hunter's and Silver lakes. Much of it is conducted there by artificial ditches, and the seepage so collected is conducted into these small lakes or ponds, and into Decker's lake, and from the latter, a distance of about two miles, by means of a drain ditch, into White lake, which forms part of the Surplus canal. Much of this seepage is from alkali or mineralized lands. This seepage so conducted to and emptied into the Surplus canal is unfit for domestic or irrigation purposes. In fact, it kills vegetation, and renders the land irrigated by it unproductive.

Upon a final hearing of the case upon the pleadings, evidence, and arguments of counsel, the court rendered a decree denying the prayer for an injunction, dismissing plaintiff's action, and awarding costs against the plaintiff to the defendants. From this decree plaintiff has appealed, and assigns numerous errors, upon which a reversal is asked, and that the court below may be ordered to enter a decree perpetually enjoining the defendants as prayed in plaintiff's complaint, and for costs.

*E. W. Taylor, C. F. and F. C. Loofbourow,* and *Moyle, Zane and Costigan,* for appellant.

The rule is that surface water cannot be collected in artificial channels and discharged upon the property of an adjoining owner. Gold on Waters, Sec. 271; Wood on Nuisances, Sec. 396; *Livingston* v. *McDonald,* 21 Ia. 160; *Butler* v. *Peck,* 16 Ohio St. 334; *White* v. *Chapin* (Mass.), 12 Allen 516; *Foote* v. *Bronson* (N. Y.), 4 Lans. 47; *Hicks* v. *Silliman,* 93 Ill. 255; *Coffman* v. *Griesmer,* 26 Pa. St. 407; *Martin* v. *Riddle,* 26 Pa. St. 415; *Miller* v. *Lauback,* 47 Pa. St. 154; *Davis* v. *Londgreen,* 8 Neb. 43; *Porter* v. *Dunham,*

74 N. C. 767; *Templeman* v. *Vashloe,* 72 Ind. 134; *The Cairo Ry. Co.* v. *Stephens,* 73 Ind. 278; *Goldsmith* v. *Elsas,* 53 Ga. 186; *Boynton* v. *Langley,* 3 Am. St. 781, and note; *Taylor* v. *Fichas,* 64 Ind. 167; *Gillis* v. *Nelson,* 16 La. Ann. 275; *Sowers* v. *Schepp,* 15 La. Ann. 300; *Jute* v. *Hough,* 67 N. Y. 267; *Martin* v. *Jett,* 12 La. 501; 51 Am. Rep. 424; 91 Am. Dec. 742; 37 Am. Rep. 15; 89 Am. Dec. 563; 32 Am. Dec. 120; 24 Am. St. Rep. 113; 31 Am. St. Rep. 417; 21 Ia. 169; 77 Am. Dec. 194; 71 Am. Dec. 521; 32 Am. Dec. 120.

Irrigation water must not be deteriorated in quality to the damage of any other person.   *Crane et al.* v. *Winsor,* 2 Utah 248; Black-Pomeroy, Secs. 76-77; *Bear River Co.* v. *New York M. Co.,* 8 Cal. 327; *Hill* v. *Smith,* 27 Cal. 476, 32 Cal. 166; *Cramer* v. *Randall,* 2 Utah 248.

In order to establish an easement by adverse possession, the defense should have conclusively shown that plaintiff had express knowledge that its rights were being invaded. Washburn Easements 4th Ed. pp. 180, 181, par. 86; also p. 163, p. 43; *Zigefoose* v. *Zigefoose,* 69 Ia. 391; 7 Allen (Mass.) 368.

To establish a prescriptive right it must be shown that a nuisance was maintained for the full period with equally offensive results.   *Boynton* v. *Longley,* 19 Nev. 69; Wood on Nuisances, Sec. 708; *Matthews* v. *Stillwater,* 65 N. W. Rep. 947 (late decision).

The changing or enlarging a drain ditch avoids a prescriptive claim.   *Totel* v. *Bonnefoy,* 123 Ill. 653; *Boyington* v. *Longley, Supra;* Enc. of Law, Vol. 6, pp. 16-19; 13 Met. (Mass.) 429; 60 Am. Dec. 453; *Matthews* v. *Stillwater,* 65 N. W. Rep. 947 (late decision).

A prescriptive or adverse title for a nuisance cannot be acquired by a secret user, only from the time the nuisance is known to the plaintiff and he was damaged thereby.

Wood on Nuisances, Sec. 706; 60 Am. Dec. 382, 77 Am. Dec. 27; *Grigsby* v. *Clear Lake W. Co.*, 40 Cal. 396.

Washburn on Easements, p. 150, Secs. 26-26a.

The rule is not changed even though the plaintiff came to the nuisance. 159 Mass. 147-151; 16 Am. & Eng. Enc. of Law, 394.—Note 1.

By reference to Secs. 2785-4727, Compiled Laws of Utah, it will be seen that the acts of the defendant canal companies in invading the Surplus canal is indictable. A prescriptive right cannot be maintained against a prohibitory law. See Green's Ultra Vires, p. 35; 4 Enc. of Law, Vol. 4, p. 212 and Vol. 6, p. 16; 64 N. C. 604.

Not only are the acts complained of against the defendant canal companies a private but they are also a public nuisance and no person can gain a prescriptive right to maintain a public nuisance. 89 Am. Dec. 616, 82 Am. Dec. 731; *Jenkins* v. *Irrigation Co.* (Utah), 44 Pa. Rep. 829.

*Richards & Richards*, for respondent canal companies.

The plaintiff has no right or privilege in the Surplus canal or in the waters thereof, either by grant or appropriation. Its alleged grant is void for want of authority in the officers to execute the same. Under no circumstance could it take effect on the 27th day of February, 1886, for the reason that there was then no grantee to receive the grant, and it could not affect persons acquiring intervening rights who are not parties thereto. 2 Cook on Stock & Stockholders 716; *Nott* v. *Danville Seminary*, 21 N. E. 927; *Bank* v. *Church*, 109 N. Y. 512; *Blen* v. *Bear River Co.*, 20 Cal. 602; *Corbett* v. *Woodward*, 5 Sawyer 403; *England* v. *Deerborn*, 141 Mass. 590; *Jessup* v. *Bank*, 14 Wis. 331; *Titus* v. *Railroad Co.*, 37 N. J. Law 98; *Leggatt* v. *N. J. Co.*, 1 N. J. Eq. 511; *Wait* v. *Nashua* (N. H.), 23 Atl. 53; *Linden Mills* v. *Linden Inst.*, 22 Atl. 575; *Insurance Co.* v. *Mechanics' Co.*, 7 Wend. 31.

The law is well settled, that an unincorporated association cannot take a grant in its association name or hold title to realty.   Devlin on Deeds, 190; 1 Beach on Corp. 379; *Jackson* v. *Cory*, 8 Johns. 386; *German Land Asso.* v. *Schaller*, 10 Minn. 338; *Hornbeck* v. *Westbrook*, 9 Johns. 75; *Jackson* v. *Sisson*, 2 Johns. cases 321; *Swain* v. *McCohany*, 4 Ohio 157; *Thomas* v. *Marshfield*, 10 Pick. 368; *Bartlett* v. *King*, 12 Mass. 537; *Hamblett* v. *Bennett*, 6 Allen 140; *Tucker* v. *Seaman's Aid Soc.*, 7 Met. 188.

The drainage, in connection with the irrigation of land, is a reasonable use of the property of the canal companies, and one which they were entitled to enjoy.   This was held to be the law by the trial court and is supported by authority.   *Barnard* v. *Shirley*, 34 N. E. 600; *Panton* v. *Holland*, 17 Johns. 99; *Gibson* v. *Puchta*, 33 Cal. 310; 24 N. Y. Sup. 193.

By strict analogy, where a statute provides for acquiring water rights by continuous, peaceable, uninterrupted and adverse use for a certain period, as in our State, that statute applies, instead of the statute with reference to land, where rights or easements in water are sought to be acquired.

It is universally held that such a right may be acquired. Goddard on Easements, 68-69, 258, and note G.; 2 Sin. N. S., 163; 21 L. J. Ch., 253; Black's Pomeroy, 152; Wood on Lim. of Actions, 181; 1 Wood on Nuisance, S. 719; 54 Pa. St., 40; 74 N. Y., 341.

Whichever theory is accepted, it is universally held that the right is acquired in the period prescribed by the statute of Limitation of Actions, in this State, seven years. See cases cited above, and also: Black's Pomeroy, S. 152; Angell on Water Courses, S. 208; 19 Am. & Eng. Ency. of Law, 11; Washburn on Easements, 140; *Woodmansee* v. *Harkness*, 7 Utah 227.

That such a right may be acquired for drainage is also true. *Earl* v. *Dehart,* 12 N. J. Eq. 280.

The statute began to run when the drain was made and the water emptied into the White lake. The acts were of such a character as to give notice to all parties of the defendants' claim of right, and plaintiff, having had the means of knowledge, cannot say that it did not know. *Close* v. *Sance,* 27 Ia. 503; *School District* v. *Lynch,* 33 Conn. 330; *Thompson* v. *Pioche,* 44 Cal. 517; *Poignard* v. *Smith,* 6 Pick. 172; *Scruggs* v. *Scruggs,* 43 Mo. 142; *Samuels* v. *Borrowscale,* 104 Mass. 210; *Wilson* v. *Williams,* 32 Miss. 488.

*Waldemar Van Cott, Graham F. Putnam,* and *Ray Van Cott,* for respondent, Salt Lake county.

*Wm. McKay* and *D. B. Hempstead,* for respondent, Salt Lake City.

ZANE, C. J. (after stating the facts):

The plaintiff claims the legal right to take and use water from the Jordan & Salt Lake Surplus canal for irrigation and domestic purposes; that it has an interest in and right to the Surplus canal, and to its waters, to that extent; and that, in view of the pleadings and evidence, the court should protect that right by a writ of injunction; while the Utah & Salt Lake Canal Company, the South Jordan Canal Company, and the North Jordan Irrigation Company, three of the defendants, deny that plaintiff has any interest in the Surplus canal, or any right to take water therefrom for irrigation or other purposes, and they claim the right to use the same canal to carry the seepage and surplus waters from the lands irrigated by them, from their canals, though its waters may be thereby so polluted and befouled by alkali or other substances as to render it unfit for irrigation or domestic purposes. It is plain that the Surplus

canal cannot be used for both purposes. It cannot be used to carry water fit for irrigation, and water unfit for irrigation, at the same time. The use of the Surplus canal to carry water unfit for irrigation or domestic purposes is, in effect, an exclusive right to the use of it, so far as the use of it to carry water for irrigation or domestic purposes goes; and the right to use it to carry water for irrigation or domestic purposes, in effect, excludes the use of it to carry water unfit for irrigation or domestic purposes. The two rights are perfectly inconsistent, and cannot be enjoyed together.

This brings us to the question, has the plaintiff the right to take or use water from the Surplus canal for irrigation, culinary, or other domestic purposes? The plaintiff insists that the Surplus canal was constructed to relieve the Jordan river during freshets or high water; to carry a portion of its water and overflow water at such times, and as a drainage canal, to that extent; and also for the purposes of irrigation and domestic purposes; while the defendants claim it was constructed alone for the purpose of drainage to carry the seepage and surplus water from the lands irrigated by the defendant canal companies and others, as well as to relieve the Jordan river and adjacent lands submerged by it in times of freshets and high water. The understanding of various persons as to the object of the incorporation known as the Jordan & Salt Lake Surplus-Water Canal Company was received in evidence by the court below. While a special charter was not granted by the legislature of the late territory to the Jordan & Salt Lake Surplus-Water Canal Company, and it was incorporated under a general law, its articles of incorporation under that law were given the effect of a charter; and in them its purposes and powers must be found,—from them its franchise or franchises must be ascertained. Such a cor-

poration can only use such powers as are expressly mentioned in its charter, and such as may be necessary to execute those expressed. In the case of *Thomas* v. *Railroad Co.*, 101 U. S. 71, the court said: " Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others." The object and business of the Jordan & Salt Lake Surplus-Water Canal Company, expressed in its charter, was "to construct [the canal described] for the purpose of diverting a portion of the said Jordan river from its present channel, and causing it to flow into " Salt Lake at a point named, " thereby preventing the western portion of Salt Lake City and the lands along the Jordan river from being submerged in times of high water, and making practicable the draining, irrigating, and cultivating of large tracts of land hitherto unavailable for agricultural purposes; and to this end the association may construct and maintain all necessary dams, head gates, flumes, and other means which may be necessary to control, regulate, and distribute said water for the purposes herein indicated." The objects were to divert a portion of the waters of the river in times of high water, to prevent the western portion of the city from being submerged, and to make practicable the drainage and irrigation and cultivation for agricultural purposes of large tracts of land; and to those ends the company was empowered to construct and maintain all necessary dams, head gates, flumes, and other means which might be necessary to control, regulate, and distribute the waters of the canal so diverted from the Jordan river. It is apparent that the diversion of water and its distribution for irrigation were intended, as well as the diversion of water from the Jordan river at times

of high water. Having the power to construct and use its canal for the purpose of irrigation as well as drainage, the Surplus Canal Company was authorized to enter into the contract with the North Point Irrigation Company dated December 9, 1886, in which it granted to the company the right to take water from its canal for irrigation and domestic purposes, and to construct dams and gates to divert water into the canal of the North Point Irrigation Company to that end. This contract in writing of December 9, 1886, referred to, ratified the verbal contract of February 27th of the same year with the unincorporated company. While the name of the North Point Canal Company is used in the written contract, there is no doubt from the evidence that the North Point Irrigation Company, who had succeeded to the property and rights of the unincorporated company, was intended, and we must hold that the contract was made with the incorporated company.

Defendants also insist that the execution of the contract of December 9, 1886, by the Surplus-Water Company, was not proven by a preponderance of the evidence. While the evidence was conflicting, we are disposed to find that it was proven by a clear preponderance, and that it was executed by authority of both parties to it. It purports to be so signed. Two witnesses so state. It was acknowledged and delivered by the proper officers of the Surplus Company, duly filed for record, and recorded. The North Point Irrigation Company on the faith of it built a new canal the distance of a mile, at considerable cost, thereby connecting their canal with the Surplus canal, constructed a head gate according to the terms of the contract, contributed to the building of the Surplus canal, and took out water under the contract, whenever desired, until this suit was brought. After the contract was so signed, acknowl-

edged, delivered, accepted, and acted upon by both parties, it would be a breach of faith for the defendants to avoid it now on the ground that it was not authorized and duly executed. After this contract or grant was so executed, acknowledged, delivered, and recorded, the Jordan & Salt Lake Surplus-Water Canal Company transferred their canal to Salt Lake City and Salt Lake county, upon the condition that they would take the control and management of it for the uses and purposes for which it was constructed. It appears from the evidence in the record that the North Point Irrigation Company acquired its right to take water from the Surplus canal before its waters were rendered unfit for irrigation by the impure surplus and seepage water discharged through the drain ditch into it from Decker's lake. But the canal company defendants claim that the seepage and surplus water from the lands irrigated by them flows naturally into White lake, a part of the Surplus canal. Undoubtedly a proprietor of higher land is entitled to the benefit of the natural flow therefrom, onto the lands of another, of surface or other water not brought there by artificial means. But, when water is brought onto the higher land by artificial means, the proprietor is not entitled to such natural flow onto the land of another, to his injury. The proprietors of higher lands have not the right to the natural flow of water brought onto their lands by artificial means. If natural forces alone bring water onto a man's land, he may allow natural forces to take it off, though it may be deposited on the land of another, to his injury. Seepage from lands, caused by irrigation water brought in canals or other artificial ditches, cannot be regarded as natural seepage or drainage. It is not brought there alone by natural laws, as water from rain, snow, or springs is. Nor is the water in question conducted by gravitation, in drains or

depressions made by natural forces, into the Surplus canal. It appears that the seepage and surplus water complained of is conducted, in small, artificially constructed drains, into the chain of lakes, and some of those are connected by such artificial ditches until it reaches Decker's lake, and from that a drain ditch nearly two miles long, of considerable width and several feet deep,—in one place as much as six feet,—was made and is maintained by the defendants, through which the waters so collected in Decker's lake flow into the Surplus canal. The defendants have no right to conduct water through their canals onto lands irrigated by them, and then, by means of drain ditches, conduct the seepage and surplus water therefrom, rendered unfit for irrigation or domestic uses, into the Surplus canal, out of which the plaintiff has the right to take water for useful purposes. *Butler* v. *Peck*, 16 Ohio St. 334; Gould, Waters, § 271; *Livingston* v. *McDonald*, 21 Ia. 160; *Adams* v. *Walker*, 34 Conn. 466; 1 Wood, Nuis., §§ 386, 387.

There is evidence that the waters of Decker's lake, before the drain ditch complained of was constructed, when the water was high, sometimes overflowed its rim, and found its way into the Surplus canal. This, however, did not authorize the defendants to cut a drain ditch through the rim or intervening higher ground, and conduct such water as would not overflow into the Surplus canal. In *Butler* v. *Peck, supra,* the court said: " And it makes no difference that * * * in times of high water a portion of the waters of the basin would overflow its rim, and find their way, along a natural swale, to and upon the lands of the plaintiff below; for, as to those waters which naturally could not surmount nor penetrate the rim of the basin, but were compelled to pass off by evaporation, or remain where they were, the case is the same as if the basin had

no outlet whatever." Section 2785, Comp. Laws Utah 1888; declares: "It shall be the duty of all persons using water from any natural source of supply, to provide suitable ditches for conveying surplus water again into the natural channel, or other place of use, to the satisfaction, or approval of the water commissioner." It appears that the defendant canal companies divert water from the Jordan river into their canals, several miles above the point where the Surplus Canal Company connects with the same river (one of them as much as 17 miles above), and that they have a number of drain ditches, at different points, carrying the surplus and seepage water back into the river, the natural source of supply; but, when they came down to the chain of ponds or lakes, they constructed their drain ditches into them, and from them into the Surplus canal, whose waters the plaintiff uses for irrigation. They should have carried the seepage and surplus water complained of back into the common source, the Jordan river, as they do further up the river, as the statute contemplates, or to Salt Lake. Either way appears practicable, from the evidence.

The canal companies, defendants, also claim a prescriptive right to drain the water complained of into the Surplus canal. The evidence proves that the defendants, the canal companies, first constructed their drain ditch in the spring of 1886, but enlarged and extended it as late as 1892. And it appears that the plaintiff used water from the Surplus canal to the last-named year, when it was found to be unfit for irrigation, culinary, or other domestic use. At that time plaintiff's officers and agents found it was so impure as to be altogether unfit for use. The drainage of pure water, or water suitable for irrigation or other uses to which the plaintiff wished to put it, into the Surplus canal, was not inconsistent with plaintiff's use of it

for the purpose of irrigation or other use. So long as the plaintiff obtained water from the Surplus canal suitable for its purposes, it could make no difference whether it all came from the Jordan river, or other source. But as soon as seepage or surplus water was emptied into the canal, that rendered it unfit for use, then such drainage became inconsistent with plaintiff's use of the same canal for irrigation purposes, and the canal companies' use of it became exclusive. It has been held that adverse use of an easement will give title by prescription, when substantially the same, as to length of time, exclusiveness, acquiescence, and in other respects, as the adverse possession that will give title to real estate. If the adverse possession that will give title under the statute of limitations is required to be exclusive, continuous, and uninterrupted for seven, ten, or other number of years, under claim of right, with the knowledge and acquiescence of the owner, then the same facts must exist to give title in case of an easement. The statute of limitations as to real estate in force in the late territory and in this state at the time it is claimed that canal companies, defendants, gained the right by prescription to drain their seepage and surplus water into the Surplus canal, required the existence and concurrence of facts that do not exist with respect to the alleged easement relied upon in this case. This is apparent from an examination of sections 3136, 3137, Comp. Laws Utah 1888. There is no analogy between the facts attending the alleged easement relied upon in this case, and the facts required to be shown in order to gain title under the statute of limitations.

The canal companies also rely upon section 2780 of the same compilation, which declares that: "A right to the use of water for any useful purpose, such as for domestic purposes, irrigating lands, * * * is hereby recog-

nized and acknowledged to have vested and accrued as a primary right to the extent of and reasonable necessity for such use thereof, under any of the following circumstances: * * * (2) Whenever any person or persons shall have had the open, peaceable, uninterrupted and continuous use of water for a period of seven years." The facts upon which the easement claimed by defendants must stand are not analogous to those giving the right to the use of water under the statute. The statute relates to the use of water for a useful purpose. The defendants claim a right to drain impure and befouled water into a canal whose waters are used for the purpose of drainage, irrigation, and domestic purposes. The right described by the statute is to take water for useful purposes. The right as described in the pleadings and evidence is to discharge impure water, unfit for use, into a canal whose waters are used for irrigation, culinary, and other domestic purposes. The facts upon which the canal companies rely to establish a right by prescription are not analogous to those required by either of the statutes above referred to. And they can only be applied as to time when analogous in other respects. *Harkness* v. *Woodmansee*, 7 Utah 227; 19 Am. & Eng. Enc. Law (1st. Ed.), p. 11.

The discharge of impure and foul water into a canal whose waters are used for irrigation or other useful purpose creates a nuisance. It appears from the evidence in this case that the waters of the Surplus canal were rendered totally unfit for irrigation or domestic purposes by the seepage and surplus water from the land irrigated by defendants' canals, discharged through their drain ditch from Decker's lake. Section 3463 of the statutes (Comp. Laws Utah 1888) declares that: "Anything which is injurious to health, or indecent, or offensive to the

senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property is a nuisance, and the subject of an action. Such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance; and by the judgment the nuisance may be abated or enjoined, as well as damages recovered." This section declares that anything which is injurious to health, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of property, is a nuisance. The mixing of alkali or mineral with water used for culinary or other domestic use, so that it cannot be used, is certainly offensive to the taste, injurious to health, and interferes with the enjoyment of life. And to befoul water used for irrigation, so that it kills vegetation, is an obstruction to the free use of property, and interferes with its enjoyment. A nuisance may be offensive to the sense of smell, sight, or hearing. In the prosecution of a business, offensive odors may be cast off, unusual and offensive noises may be given out, fluid substances may escape into a neighbor's well, or one may do or cause to be done that which is offensive to the eye. In either case it may become a nuisance. Or the thing done or maintained may be injurious to property, and affect the free use of it, and in that way be a nuisance. Wood, Nuis. §§ 115, 116; *Crane* v. *Winsor*, 2 Utah 248; Black, Pom. Water Rights, § 76.

The use that will give a prescriptive right to maintain a private nuisance must be adverse, under a claim of right, uninterrupted, and continuous, for 20 years, with the knowledge and acquiescence of the party whose right is invaded. *Campbell* v. *Seaman*, 63 N. Y. 568; 1 Wood, Lim. (1st Ed.) § 182; *Totel* v. *Bonnefoy* (Ill. Sup.), 14 N. E. 687.

The general rule is that there can be no prescriptive right to maintain a public nuisance. Time will not sanctify it. *Ashbrook* v. *Com.*, 1 Bush. 139; *Wright* v. *Moore*, 38 Ala. 593.

It appears from the evidence in the record that plaintiff's canal was designed to irrigate various tracts of land owned by different persons, and that a number of them irrigated their lands from the canal for a time, and that stock drank of its waters. The further question is, did the canal companies create a public nuisance by draining the seepage and surplus water from the lands irrigated by them into the Surplus canal, in that way contaminating its waters with salt and other substances, thus rendering it unfit for use? The statute (section 4566, Comp. Laws Utah 1888) declares that: "A public nuisance * * * consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either: (1) Annoys, injures, or endangers the comfort, repose, health, or safety of three or more persons. * * * (4) In any way renders three or more persons insecure in life, or the use of property." It appears that various persons were prevented from cultivating or using their property, and the water upon which they relied to some extent for watering stock and for domestic purposes was made unfit for these purposes. It is true that considerable evidence was introduced on the trial tending to show that much of the land situated so that it could be irrigated from plaintiff's canal is impregnated with alkali and salt, and unfit for agricultural purposes. But the evidence establishes the fact that crops grew on some of it prior to 1892, when irrigated with water from the plaintiff's canal, received through the Surplus canal, from the Jordan river, before the drain ditch from Decker's lake was enlarged; and we think the evidence authorizes the inference that a

great portion of the land that could be leached and irriga-ted from plaintiff's canal would eventually become fit for cultivation if irrigated alone with water from the Jordan river, or with water through the Surplus canal, without being mixed with the water from the drain ditch from Decker's lake.   There was also evidence tending to prove that the waters of White lake, through which the Surplus canal runs, contain a large per cent. of salt; that its waters are unfit for irrigation.   That lake is not large, and from the evidence we are of the opinion that a portion of the waters of the Jordan river, running through it, would purify and render it fit for irrigation, when not con-taminated with the seepage and surplus water from the lands irrigated by the canals of the defendants, and by waters of the chain of lakes discharged through the drain ditch from Decker's lake.

The defendants finally urge that the findings of the court below should not be disregarded or set aside, and the decree based thereon reversed, unless it appears that they, or some one or more of them, are so essentially and palpably erroneous as to induce a belief that such findings were induced by a mistake, or that the court was misled in some essential respect with respect to them. This appeal was taken on questions of fact as well as of law, and this court has recently held that in equity cases we may go behind the findings, and weigh all the evidence, and decide according to its preponderance.   But when the evidence as to a fact found to exist or not to exist is so evenly balanced, or the proof of it is so unsatisfactory, as to cause the mind to hesitate and pause as to the side on which it preponderates, or as to its existence or non-existence, and to leave it in grave doubt, we are of the opinion the finding of the court below should remain.   In

the case of *Whittaker* v. *Ferguson*, 16 Utah 240, this court said: " An appeal may be taken in equity cases on questions of fact as well as of law. The appellate court, therefore, by necessary implication, has the same jurisdiction and power in equity cases to determine questions of fact as of law, and may go behind the findings and decree of the trial court, consider all the evidence, decide on which side the preponderance thereof is, ascertain whether or not the proof justifies the findings and decree, and modify or set aside the findings and decree, and enter or direct such findings as the evidence, in the judgment of the appellate tribunal, may justify." We hold that the court below erred in its findings, so far as they conflict with this opinion, and in granting the decree entered upon them. The decree appealed from is reversed, and the cause is remanded, with directions to the court below to set aside its findings so far as they conflict with this opinion, and to make additional findings in conformity with it, and to enter a decree perpetually enjoining the three canal companies named as defendants from draining the seepage or surplus water from the lands irrigated from their canals, or any or either of them, or the waters of the chain of lakes mentioned in the pleadings, through the drain ditch from Decker's lake, also mentioned in the pleadings, or otherwise, into the Salt Lake Surplus-Water canal, or into White lake, a part of it, and ordering them to fill up said drain ditch, and ordering a writ of injunction to the same effect, against each of the defendants. Costs are awarded to the plaintiff against the defendants.

MINER, J., and JOHNSON, District Judge, concur.