Argued 20 March, decided 22 May, 1906.

### MacRAE *v.* SMALL.

85 Pac. 503.

Waters—Point of Appropriation in a Ditch.

1. A valid appropriation of water may be made by diverting it from an artificial waterway if the owner thereof consents; but a seizure of water from another's ditch cannot be the foundation of an appropriation.

EVIDENCE OF RELINQUISHMENT OF WATER RIGHT.

2. The evidence shows that the defendant did not intend to relinquish an appropriation made by his predecessor in interest.

EVIDENCE OF ADVERSE USE OF WATER.

3. The evidence does not show that the defendant's water rights were lost by adverse use by another, as such use was not exclusive of plaintiff's use.

ADVERSE USE—KIND OF EVIDENCE REQUIRED.

4. The evidence of adverse use required to deprive an appropriator of his vested right to the use of water must be clear and convincing.

From Grant: MORTON D. CLIFFORD, Judge.

Suit for an injunction, resulting in a decree for defendant, from which this appeal is taken.    AFFIRMED.

For appellant there was a brief and an oral argument by. *Mr. Errett Hicks.*

For respondent there was a brief with oral arguments by *Mr. John Langdon Rand* and *Mr. Morton D. Clifford.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit by Kenneth F. MacRae against James Small to enjoin interference with the flow of water in a ditch to plaintiff's premises, and to recover damages for intermeddling therewith, his right being based on an alleged appropriation, and also on a prescriptive use. The answer denies the material allegations of the complaint, and avers that the defendant's predecessor in interest made a prior appropriation of all the water in question in 1870, which quantity had ever since been used in irrigating the lands now owned by the defendant. The reply admits that defendant's predecessor constructed a small ditch from a stream to his premises, appropriating about six inches of water and, on December 10, 1881, conveyed the lands to defendant's grantor, who immediately abandoned such use, and alleges that no right to the water was thereafter asserted until June 1, 1902. The cause was tried, resulting in a decree for the defendant; awarding him the use of all the water in controversy, and plaintiff appeals.

The transcript shows that about 1870, one Marcus D. Reeves settled on unsurveyed public land through which a perennial stream flows that was subsequently called Reeves' Creek. This brook rises in a spur of the Blue Mountains in Grant County,

flows southerly and empties into the John Day River, affording in the dry season about 20 inches of water, miners' measurement. Reeves in 1872 constructed a flume from the creek with which he connected a ditch, whereby water was diverted and used to irrigate crops grown on the arid land on which he had settled. . The township in which such land is situated was surveyed in 1873, by authority of the general government, whereupon Reeves filed a homestead claim on the premises containing his improvements, described as follows: The S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$, the S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, the N. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$, and the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 12, in township 13 S., of range 27 E., of the Willamette Meridian, and April 20, 1882, a patent from the United States was issued to him therefor. Reeves built a good house on this land, fenced most of it, cultivated several acres thereof, and raised good crops thereon by use of the water which he had diverted. He also irrigated with water from his ditch a meadow of about 10 acres on land subsequently patented to Louisa Aldrich, which is described as follows: The S. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, the W. $\frac{1}{2}$, and the S. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of that section.

Reeves and his wife had some difficulty in consequence of which he left her, after making final proof in support of his entry, and made his home with one Robert B. Hay, to whom, on December 10, 1881, he executed a deed of his land, but she did not join in the conveyance. Hay also obtained a deed of the Aldrich land, and on October 4, 1889, conveyed it and the Reeves tract to the defendant. Reeves left Grant County soon after executing his deed, and having never since been heard from, it is generally believed that he is dead. Mrs. Reeves subsequently married M. E. Gage who in 1884, settled on the N. one half of the N. one half of section 11 in that township and range, which land was then owned by the Eastern Oregon Land Co., a corporation, the title thereto having been secured, with other lands, by mesne conveyances from the United States, pursuant to an act of Congress of February 25, 1867 (14 Stat. U. S. 409, c. 77), granting lands to the State of Oregon to aid in the construction of a military wagon road, and also conformable to an

act of the legislative assembly of this state (Laws 1868, p. 3), designating the Dalles Military Road Co. as the artificial being entitled to the benefits of such grant. Gage, in the spring of 1886, took possession of Reeves' flume, which he repaired, and of his ditch, which he cleaned out from its head to a point near the termination thereof, from which he constructed a ditch to land on which he had settled, and used the water of Reeves' Creek to irrigate crops. He executed a quitclaim deed, December 31, 1888, to plaintiff of all his interest in such land, but no mention was made therein of any ditch or water right. The Eastern Oregon Land Co., on November 1, 1890, gave a deed of such land to the plaintiff, who, ever since securing possession of the premises from Gage, has caused water so diverted to be used in irrigating crops grown thereon until June 1, 1902, when his ditch was cut by defendant's tenant, thereby causing an embroilment which resulted in this suit.

The first question to be considered is whether the testimony shows that the use of water from Reeves' Creek was abandoned by Hay, and not thereafter resumed by the defendant until the ditch referred to was cut, and whether MacRae and his predecessor in interest for more than 10 years prior to bringing this suit have, under a claim of right, openly, notoriously, and continuously, applied such water, each season, to the irrigation of crops grown on his land, thus securing by prescription a preferred right thereto? Neither Hay nor the defendant ever lived on the land now owned by the latter, but as they were severally engaged in raising sheep, their flocks were occasionally kept thereon during winters, and in the summers they were driven to and herded on distant ranges. After Reeves conveyed his homestead, the fences which he had built were allowed to decay and sage brush was permitted again to grow on all the land that he had cultivated, except about an acre thereof on which, by the use of water from the ditch, garden vegetables were occasionally raised by persons who temporarily occupied the house on the premises. Some placer mining was attempted on the Aldrich place by using water from the ditch, but as this work was not done in the irrigating season the extent of such

use is not deemed material. In the 10 years from the spring of 1886, when Gage first applied the water to the irrigation of crops grown on the land now owned by plaintiff, gardens were cultivated and vegetables raised on the Reeves' homestead by persons and in area as follows: H. Munjar, Jr., in 1893, not an acre, and J. E. Noble in 1894 and the following year about an acre. This is the extent of the use of such water for irrigating the defendant's tillable land during the entire period of the statute of limitation. J. Helmadore, as defendant's witness, testified that in October, 1899, he took a band of sheep to the Reeves land and kept them there for Small until the following spring, and that while on the place he put some rocks in the head of the ditch and turned water on defendant's land to irrigate grass growing on a meadow. The defendant, as a witness in his own behalf, testified that when he purchased the Reeves and the Aldrich lands the fences once standing thereon were nearly all destroyed, and that cattle and horses could come and go at will over the entire premises, but that by the use of water from the Reeves ditch, grass could be kept alive without inclosing the meadow on which it grew; that every year after securing the deed to these lands he had sent men thereto from his home ranch, about four miles distant, to irrigate the premises, frequently going there himself for that purpose, always using the water when necessary and sometimes taking the entire flow of the ditch, thereby keeping the timothy growing on a meadow and also irrigating a lower bench of cultivated land, containing in all about 10 or 12 acres which were partly covered with sage brush; and that he never gave Gage or McRae any authority to use the water, though as a neighborly act he had permitted the surplus after supplying his needs to flow in the ditch to plaintiff's land, until he learned that a right thereto by adverse user was claimed.

The plaintiff's witnesses, who lived in the vicinity of the Reeves' land severally testified that they never saw the defendant or his employees using water from the ditch. It further appears that plaintiff's occupation is raising sheep, which business Gage was formerly conducting, and as the latter was

grazing more land than the parties hereto thought he was entitled to occupy, the plaintiff, at the defendant's suggestion, purchased Gage's interest in the lands on which he had settled, and MacRae, referring thereto, testified that defendant then made no claim to the use of the water thereon from Reeves' creek. When Gage's deed was executed an agreement was consummated whereby plaintiff was to keep his sheep west of Reeves' creek, and the defendant would pasture his flocks east of that stream, the terms of which contract the parties have ever since observed. The defendant further testified that he advised plaintiff to purchase Gage's interest in the lands on which he had settled, but he did not then know that any water from Reeves' creek had been used on the premises. The plaintiff does not live on the Gage place, but his tenants have cultivated about 35 acres thereof which, without the use of water from Reeves' creek, must become nearly valueless. Gage testified that when he applied the water of such creek to the irrigation of crops grown on the land now owned by plaintiff he knew that the premises were within the limits of the grant to the State of Oregon, but that he thought, because a part of the section had been settled upon prior to the act of Congress, that the land which he selected would not pass under the terms of the grant, and that he could procure a title thereto directly from the United States, but that having applied therefor at the local land office he was unable to make an entry thereon. The foregoing is the substance of the testimony given at the trial from a consideration of which the plaintiff's right to use the water of Reeves' creek, if it exist, must be determined.

1. Gage was evidently a trespasser on the land on which he settled, but as the use of water thereon was undoubtedly a benefit to the Eastern Oregon Land Co., the owner of the premises, and as such advantage regularly passed to the plaintiff, it will be assumed, without deciding the question, that Gage was authorized to make a valid appropriation of water, and to apply the same to such land. Such appropriation could legally have been made by taking water from the Reeves ditch, if the consent of the owner thereof had been secured: *Water Supply &*

*Storage Co.* v. *Larimer & W. Irrig. Co.* 24 Colo. 322 (51 Pac. 496, 46 L. R. A. 322) ; *North Point Consol. Irrig. Co.* v. *Utah & Salt Lake Canal Co.* 16 Utah, 246 (52 Pac. 168, 40 L. R. A. 851, 67 Am. St. Rep. 607). In *McPhail* v. *Forney,* 4 Wyo. 556 (35 Pac. 773), Mr. Justice Conaway, speaking for the court in discussing this question, says: "Plaintiff in error also forgets that it is just as necessary to the creation and preservation of a water right, to provide means for the continual diversion of the water from its natural channel and for conducting it to the place where it is applied to some beneficial purpose, as it is to apply it to the beneficial purpose. And he cannot arbitrarily seize and use another's ditch, or interest in a ditch, for that purpose." No consent to divert the water from the ditch was ever secured, but Gage arbitrarily seized and used the conduit constructed across patented land, and hence plaintiff, as his successor in interest, never acquired any right by appropriation to the use of water from Reeves' Creek.

2. A careful examination of the testimony convinces us that neither Hay nor Small intended voluntarily to relinquish the valuable right of appropriation which was initiated by Reeves, and conveyed by express stipulation contained in his deed.

3. It is contended by plaintiff's counsel, however, that from the spring of 1886 to the corresponding season of 1896, the 10 years prescribed by the statute of limitation, during which Gage and the plaintiff used the water in question, no part of the lands so owned by the defendant was irrigated, except a small garden, requiring not to exceed an inch of water, which is the greatest measure of his right, and that the plaintiff and his predecessor in interest, in the interim acquired by prescription a right to the remainder of the water flowing in Reeves' Creek, all of which is necessary to his use in the irrigating season. If the testimony of the defendant is to be believed, that each year after securing Hay's deeds of the premises he used such quantities of water as he needed to irrigate his meadow and other land, sometimes taking the entire flow of the stream, there was therefore such an interference with plaintiff's alleged continuous user as to defeat his prescriptive right.

(48th Or.—10)

It is argued by plaintiff's counsel that as the defendant's testimony in relation to the very existence of the alleged meadow is uncorroborated, except possibly by that of Helmadore, and denied by all other witnesses, the improbability of such declaration under oath is self-evident when it is considered that an unfenced meadow would be entirely destroyed by cattle, horses and sheep grazing thereon. If the grass was utterly uprooted as intimated, its complete destruction in the manner suggested would not necessarily disprove the defendant's statement that the water was applied to his meadow and cultivated land, for, the right to the entire use of the stream being primarily vested in him, as Reeves' successor in interest, he might have wasted the entire volume of water on the land which had once produced grass and crops and thereby interrupted plaintiff's adverse user. That no perosn living in the vicinity of the Reeves or Aldrich lands saw the defendant or his employees using water on his meadows does not disprove his testimony, for it does not appear from the transcript that a view of the meadow could, at all times, have been obtained by plaintiff's witnesses. That the defendant did not call any of his employees, except Helmadore, to corroborate his statement, to the effect that he frequently sent them to these lands to irrigate grass growing thereon, or offer any proof of their death, absence or inability to attend the trial, is a circumstance tending to discredit him. So, too, the plaintiff's testimony that if the defendant ever interfered with the ditch he was never aware of any diminution of the water which continuously flowed therein to his premises, where it was used for irrigation, directly controverts the defendant's statement under oath.

4. It is impossible to say with certainty that the defendant's testimony, in the particular mentioned, is true, but as he is entitled to the prior right of appropriation of all the water of the creek, and could only be deprived thereof by an adverse user, the evidence of such prescriptive right ought always to be clear and conclusive, in order to defeat a vested estate in or an appurtenant to land: 1 Am. & Eng. Enc. Law (2 ed.), 887; 1 Cyc. 1151. The agreement entered into whereby the flocks of sheep

of the defendant and of the plaintiff were respectively kept on separate sides of Reeves' Creek, tends to show the friendly relation formerly existing between the parties to this suit and probably accounts for the flow of the surplus water in the ditch to plaintiff's premises. The testimony, in our opinion, fails to show that plaintiff has made out a case with that degree of proof which the rules of law require in such cases, but rather that the weight of evidence discloses that defendant's irrigation of his meadow and other land, by means of the flume and ditch from Reeves' Creek broke the continuity of plaintiff's enjoyment of the water, thereby depriving him of a prescriptive right thereto.

These conclusions necessitate an affirmance of the decree, which is ordered.                                              AFFIRMED.