STATE *v.* A. G. NORRELL.

MANDAMUS FROM SUPREME COURT—WILL ISSUE TO TRIAL COURT, WHEN.

When the supreme court finds certain facts from the evidence, states conclusions of law applicable to them, reverses the decree of the lower court, and remands the case, with directions to that court to make its findings and conclusions conform to the findings and conclusions of the supreme court, and the lower court fails to obey such directions, a writ of *mandamus* will issue from the supreme court, requiring it to do so, and to enter a decree thereon.

(Decided June 6, 1898.)

Application by the state for a peremptory writ of mandamus against A. G. Norrell, district judge. *Granted.*

*E. W. Taylor, Moyle, Zane & Costigan,* and *Loofbourow & Loofbourow,* for the state.

*F. S. Richards, Waldemar Van Cott, G. F. Putnam,* and *Ray Van Cott,* for defendant.

No briefs filed.

ZANE, C. J.:

This is an application for a peremptory writ of *mandamus,* directed to the defendant, as judge, commanding him to make and sign the findings of fact, conclusions of law, and decree referred to in the petition. It appears that the North Point Consolidated Irrigation Company on March 9, 1897, commenced an action in the district court against the Utah & Salt Lake Canal Company, the South Jordan

Canal Company, the North Jordan Irrigation Company, Salt Lake City, and Salt Lake County, to restrain them from discharging seepage or surplus water, unfit for irrigation or domestic purposes, into the Jordan & Salt Lake Surplus-Water Canal, and to recover damages from the effects of such water so discharged. The action was based upon a number of facts alleged in the complaint, to which the defendants filed their respective answers. The trial of the issues at law were reserved, and the equitable cause upon which the injunction was asked, was tried by the defendant, sitting as chancellor, who made findings of facts, stated conclusions of law, and entered a decree denying the injunction. The plaintiff took numerous exceptions, appealed from the decree, and assigned various errors. Having heard the appeal, this court reversed the decree, and remanded the case to the court below, with directions to set aside the findings of fact and conclusions of law, so far as contrary to its opinion, and to make additional findings required thereby, and to enter a decree perpetually enjoining the three canal companies, defendants, from draining the seepage or surplus water from the land irrigated from their canals, or from either of them, or the waters of the chain of lakes mentioned in the pleadings, into the Salt Lake Surplus-Water Canal, or into White Lake, connected with it. 52 Pac. 168. The corporate existence and purpose of the respective parties to the case; the legal right of the plaintiff to take water from the Salt Lake Surplus-Water Canal into its irrigation ditches; that defendant canal companies, without right, discharge seepage and surplus waters from lands irrigated by them, by means of drain ditches, into the Surplus Canal, which rendered its waters unfit for irrigation or domestic use, to the injury of the plaintiff; that such deterioration and befouling of the waters used for irrigation and domestic pur-

poses from plaintiff's canal by numerous persons consti-
tuted a nuisance; and that the facts essential to give the
defendants a right by prescription, relied upon by defend-
ants, did not exist,—with other facts, were all distinctly
found in the opinion of the court.   The conclusions of law
predicated upon the facts found were also clearly stated,
and the decree to be entered was directed with sufficient
certainty.   But it appears that the court below,—in which
the defendant presided,—in making its findings and stat-
ing its conclusions of law, failed, in some material particu-
lars, to follow the mandate of this court; and the defend-
ant insists that in making those findings and stating those
conclusions he exercised his judicial discretion, and that,
therefore, the writ should not issue.   As to the decree
directed by the opinion, it is conceded, the court below
had no discretion.   This court will not direct a definite de-
cree to be entered by the court below, without ascertaining
the facts on which to base it.   If discretion is left as to the
facts to be found, discretion should also be left as to the
decree.   The findings of fact, conclusions of law, and de-
cree must all stand together, and be consistent with each
other.   The court below had exercised its judicial discre-
tion in making the findings and in stating its conclusions,
and in making the decree appealed from ;and this court,
in the exercise of its judicial discretion from the same evi-
dence, made different findings, and stated different con-
clusions of law, and directed the court below to enter a
different decree; and the lower court was directed to enter
the findings of fact, conclusions of law, and decree deter-
mined by this court, instead of its own.   As to them, the
lower court was left no discretion.   The defendant urges,
however, that it was his duty to determine what facts
would be, in accordance with the opinion.   In order to do
that, it was necessary for him to read the opinion, and

ascertain the facts this court had found to exist, and the law applicable to them as stated in the opinion. The lower court was required to take the facts and the law found and stated in the opinion, and was left no discretion with respect to them, but to put them in form and sign them. Its authority extended only to the execution of the mandate of this court. *Gaines* v. *Rugg,* 148 U. S. 228, was a petition for mandamus. That case had been appealed from the circuit court, and its decree had been reversed, with directions that such further proceedings be "had in said cause, in conformity with the opinion and decree of the supreme court, as, according to right and justice and the laws of the United States, ought to be had." In its opinion, deciding the mandamus case, the court said: "It is contended for the respondent that the construction of the intent and meaning of the opinion of this court in *Goode* v. *Gaines,* 145 U. S. 141, was a matter for the exercise of judicial discretion by the circuit court. But we are of opinion that it is proper for this court, on this application for a writ of mandamus, to construe its own mandate in connection with its opinion, and if it finds that the circuit court has erred, or acted beyond its province, in construing the mandate and opinion, to correct the mistake now and here, and to do so by a writ of *mandamus.*" And further on in the opinion the court said, "In the present case, as we have before observed, there was no discretion to be exercised by the circuit court; and, although it might have been admissible to raise the question by a new appeal to the proper court, yet, in view of the delay to be caused thereby, we do not consider that such remedy would have been, or would be, fully adequate, or that a writ of mandamus is not improper." We therefore order a peremptory writ of mandamus to issue, commanding the defendant, as judge of said district court, to duly sign, and enter as the

findings, conclusions of law, and decree of that court, the following findings of fact, conclusions of law, and decree found by this court, to conform to its opinion and mandate:

"Whereas, this cause was tried and submitted to this court on March 25, 1897, upon the equitable issue therein alone (the question of damages being reserved), on May 8, 1897, findings of fact and conclusions of law were made, and on the same day a decree and judgment was rendered in favor of the defendants and against the plaintiff, from which judgment and decree the plaintiff appealed to the supreme court of the State of Utah; and whereas, said judgment and decree were at the January term, 1898, of said supreme court reversed, and this court was directed to set aside the findings and conclusions and decree heretofore rendered herein, so far as they conflict with the opinion and decision of said supreme court, and to make new and additional findings in accordance with the decision of said supreme court, and to enter a decree perpetually enjoining the defendant canal companies from draining seepage and surplus waters from the lands irrigated by their canals, or any or either of them, or the waters of the chain of lakes mentioned in the pleadings, or otherwise, into the Jordan & Salt Lake Surplus-Water Canal, or into White Lake, a part of said canal, and ordering such defendants to fill up said drain ditch, and ordering a prohibitory writ of injunction to the same effect against each of the other defendants, with costs to plaintiff against the defendants: Now, therefore, in pursuance of the said direction and mandate of the supreme court, this court finds the following facts and conclusions of law:

"(1) That the plaintiff is a corporation organized under the laws of the territory of Utah, with its principal place of business in Salt Lake City, Utah.

"(2) That each of the defendants, the Utah & Salt Lake Canal Company, the South Jordan Canal Company, and the North Jordan Irrigation Company, is a corporation organized under the laws of Utah, and doing business in Salt Lake county, Utah.

"(3) That the defendant the county of Salt Lake is a public corporation, and the City of Salt Lake is a municipal corporation, in the State of Utah.

"(4) That the Jordan & Salt Lake Surplus Canal Company was incorporated under the laws of the territory of Utah March 9, 1895, with the objects and purposes, expressed by its articles of incorporation, 'to construct and manage a canal from the Jordan river to Salt Lake, for the purpose of diverting a portion of the water of the Jordan river from its channel, and causing it to flow into said Salt Lake at a point (designated, in order to) prevent the western portion of Salt Lake City, and lands along the Jordan river, from being submerged in times of high water, and to make practicable the drainage, irrigation, and cultivation of large tracts of land heretofore unavailable for agricultural purposes and to that end to construct and maintain all necessary dams, head gates, flumes, and other means necessary to control, regulate, and distribute water for the purposes mentioned'; that this company commenced the construction of its canal in 1885, and completed it in the spring of 1886, at a cost of about nineteen thousand dollars ($19,000), one-third of which was contributed by Salt Lake county, one-third by Salt Lake City, and the balance by private persons.

"(5) That the North Point Canal Company, an unincorporated association, at the same time owned an irrigating canal, and on the 27th day of February, 1886, its members held a meeting, and appointed two committees,—one to prepare articles of incorporation, and the other to negoti-

ate with the Jordan & Salt Lake Surplus-Water Canal Company to secure the right to connect with its Surplus Canal, and to take water therefrom for irrigation and domestic purposes, and that later the company ratified the action of the latter committee; that the other committee that was appointed to prepare articles of incorporation reported at a meeting held by the North Point Canal Company on May 17, 1886, and submitted a draft of such articles, which was accepted, and two days later said North Point Canal Company became incorporated, under the laws of the territory of Utah, as the North Point Irrigation Company, of which articles of incorporation, 3 and 5 are as follows: 'Art. 3. The object and pursuit of business shall be to provide for the irrigation of agricultural lands, and to provide water for culinary and other purposes within the precinct of North Point, Salt Lake county, through the now existing so-called Salt Lake Surplus Canal and the North Point Canal, and such others as hereafter may be constructed by this association; to manage and control its legitimate proportion of the waters of the Jordan river; to construct and maintain all necessary dams, head gates, weirs, flumes, pipes, or any other means that may hereafter be considered necessary to carry out the objects of this association.' 'Art. 5. The capital stock of this association shall consist of the several interests of the corporation hereof in the North Point Canal Company, together with the water rights thereto through the Surplus Canal from the Jordan river, as they now exist and appear of record in the office of the secretary of the North Point Irrigation district, Salt Lake county, Utah territory, and that the same be, and hereby is, transferred, and made to represent the capital stock of this association, and declared fully paid up, and subject to assessment, by the association from time to time, as may be required.'

"(6) That the members of the North Point Canal Company and the stockholders of the North Point Irrigation Company, relying upon the agreement that the North Point Canal Company and its successor, the North Point Irrigation Company, might take water from and through the Surplus Canal from the Jordan river for domestic and irrigation purposes, constructed a connecting canal from the Surplus Canal to the North Point Canal, and contributed work and money amounting in value to about six hundred dollars ($600) to the construction of the Surplus Canal.

"(7) That the canal and property of the North Point Canal Company and the interest of the members in the unincorporated association were transferred and passed to the North Point Irrigation Company, and became a part of its capital stock; that on the 9th day of December, 1886, a written contract was signed and entered into between the Jordan & Salt Lake Surplus-Water Canal Company and the North Point Irrigation Company, in the following language: 'Agreement between Surplus Canal Company and North Point Canal Company, Salt Lake City, 1886. Know all men by these presents, that whereas, at a meeting of the board of directors of the Jordan and Salt Lake Surplus-Water Canal Company held in Salt Lake City on the 27th day of February, 1886, the privilege to take water from the said Jordan and Salt Lake Surplus-Water Canal by the North Point Canal Company was granted on condition that the said North Point Canal Company assist materially in the construction of the said Jordan and Salt Lake Surplus-Water Canal; and whereas, the said North Point Canal Company, by its stockholders owning land under the said North Point Canal, have contributed the sum of $600 (six hundred dollars) to the construction of said Jordan and Salt Lake Surplus-Water Canal, the re-

ceipt whereof is hereby acknowledged,—the North Point Canal Company is hereby granted the privilege to take water from said Surplus Canal at a point a little north of the county bridge, constructed across said Surplus Canal at a point where Third South street of Salt Lake City, produced westward, crosses said Surplus Canal, subject to the following conditions: (1) No obstruction injuriously affecting the flow of water shall be put in the Surplus Canal during the time of high water. (2) During the times of low water, the North Point Canal Company may hold the water in the Surplus Canal at a point two (2) feet above the present grade line of the Jordan and Salt Lake Surplus-Water Canal. (3) The top of the overflow of the gate, dam, or flume placed in the Jordan and Salt Lake Surplus-Water Canal by the North Point Canal Company shall be two (2) feet below the present grade line of the Jordan and Salt Lake Surplus-Water Canal. In witness whereof, the said parties have hereunto caused their corporate seal to be affixed, and these presents to be subscribed by their vice president, this 9th day of December, A. D. 1886. T. F. Jeremy, Jr., Vice President. Witness: N. W. Clayton, Jordan and Salt Lake Surplus Canal Co. Attest: John Q. Cannon, Secretary.' [Corporate Seal.

"(8) That in said agreement the name of the North Point Canal Company was by mistake used in place of its successor, the North Point Irrigation Company; that the intention of both parties was to make the grant to the North Point Irrigation Company, to whom the instrument was delivered, and who duly filed the same for record on December 9, 1886, and has ever since acted thereunder.

"(9) That the said Jordan & Salt Lake Surplus Canal Company on December 13, 1886, by deed, conveyed to the City of Salt Lake and county of Salt Lake all of its property, privileges, and rights, including the said Surplus

Canal but subject to the condition that said Surplus Canal should be kept open, and free to accomplish the purposes for which it was constructed, for a period of ten years from the date of said transfer. Said transfer was also subject to the grant previously made to the North Point Irrigation Company.

"(10) That the plaintiff, the North Point Consolidated Irrigation Company, was incorporated August 15, 1889, and that the canal of the North Point Company, and all its franchises and interests in its property, were then transferred to the plaintiff.

"(11) That large tracts of land owned by the stockholders of the plaintiff and others depend upon its canal for irrigation; that after this canal was connected with the Surplus Canal, and up to 1892, its waters were used for irrigation and domestic purposes; that much of the land under plaintiff's canal would be productive and valuable if irrigated with water suitable for irrigation, such as is taken from the Jordan river; and that other portions contain alkali, that renders it unsuitable for growing crops, but that it would be improved through irrigation with pure water.

"(12) That the plaintiff's canal connects with the Surplus Canal about four miles below its mouth, at the Jordan river; that above that portion of the Surplus Canal, and to the south and west, the canals of the defendants, the Utah & Salt Lake Canal Company, South Jordan Canal Company, and the North Jordan Irrigation Company, are situated; that these canals take water from the Jordan river miles above the head or mouth of the Surplus Canal; that drain ditches from defendants' canals are used further up the river to carry the seepage and surplus water from the lands irrigated back to the Jordan river, but that

the seepage and surplus water from large tracts of land irrigated by defendants' canals flows into Hunters', Silver, and other lakes; that much of this seepage and surplus water is conducted into these lakes by artificial ditches, and that the seepage and surplus water so collected, and so conducted into these lakes, is conveyed by artificial ditches into Decker's Lake, and from the last-named lake is conveyed through the artificial drain ditch into White Lake, which forms a part of the Surplus Canal; that much of this seepage and surplus water is from alkali or mineralized lands, and this seepage and surplus water so conducted to and emptied into the Surplus Canal is unfit for domestic or irrigation purposes, and kills vegetation, and renders the land irrigated by it unproductive.

"(13) That the North Point Irrigation Company acquired its right to take water from the Surplus Canal before the waters of said canal were rendered unfit for irrigation by the impure seepage water discharged into it by defendant canal companies through the drain ditch from Decker's Lake.

"(14) That the defendant canal companies first constructed their drain ditch from Decker's Lake to White Lake in the spring of 1886, but enlarged and extended it in 1892; that plaintiff used water from the Surplus Canal the latter year, when it was found to be unfit for irrigation, culinary, or other domestic uses.

"(15) That the drain ditch between Decker's Lake and the Surplus Canal was first constructed by the defendant canal companies in the spring of 1886, and in 1892 this drain ditch was enlarged and extended by defendants; that during and since 1892 the plaintiff has been unable to use the water from said Surplus Canal for irrigation, culinary or other domestic purposes, by reason of the seep-

age and surplus water so discharged by defendants into the Surplus Canal, from which plaintiff takes its water.

"(16) That the waters of the Surplus Canal and White Lake would be suitable for irrigation and domestic purposes if supplied from the Jordan river alone, and not contaminated with the befouled seepage and surplus water drained from the lands irrigated by the defendant canal companies, and from the water discharged from the chain of lakes and Decker's Lake, through the said drain ditch, into the Surplus Canal and White Lake.

"As conclusions of law, the court finds:

"(1) That the Jordan & Salt Lake Surplus-Water Canal Company was a duly incorporated company, under and by virtue of the laws of Utah territory; that its object and purpose was to construct a canal from the Jordan river to Salt Lake for irrigation, and to carry off the surplus water of said Jordan river at times of high water; that this company had the right to contract and to convey to the North Point Irrigation Company the privilege to take water from the Jordan river, from and through its said canal, for irrigation and culinary use; that the use of the Surplus Canal for the drainage of water unfit for irrigation or domestic use is inconsistent, and contrary to its intent and purposes.

"(2) That the North Point Canal Company, an unincorporated association, had a right to, and did, enter into a contract with the Jordan & Salt Lake Surplus-Water Canal Company, on February 27, 1886, for a valuable consideration, to take water from the Jordan river, from and through the Surplus Canal; that said North Point Canal Company was merged into a duly incorporated company by virtue of the laws of Utah territory, and known as the North Point Irrigation Company, which latter company succeeded to all the privileges, rights, and properties of the North Point Canal Company, and to any interest of its

members therein, and particularly the right to take water from the Jordan river, and through the Surplus Canal.

·"(3) That the plaintiff, the North Point Consolidated Irrigation Company, a duly incorporated company, succeeded to, and became and is possessed of, all the rights, privileges, and property of the North Point Irrigation Company, and of the right to take water from and through the Surplus Canal from the Jordan river, and is now the owner of all such rights and property.

"(4) The plaintiff's right to take water for irrigation, culinary, and other domestic purposes from the Surplus Canal is superior to any rights of defendants, or either of them, to use the same for drainage, or any other purpose inconsistent therewith, and the conveyance into said canal of water unfit for irrigation or domestic purposes is a violation of plaintiff's rights in said canal. .

"(5) That the defendant canal companies have no prescriptive right to use the Surplus Canal or White Lake for drainage purposes.

"(6) That the acts of the defendants in conveying befouled water, or in permitting the same to be conveyed, into the Surplus Canal, constitute, and are, a private and public nuisance.

"(7) That the defendants the city of Salt Lake and the county of Salt Lake are the owners and possessed of the Surplus Canal, but subject to the purposes for which the same was built, to-wit: irrigation, and to convey off the surplus water of the Jordan river in times of high water; also subject to the rights of plaintiff.     ·

"(8) That a perpetual injunction should be directed against each and all of the defendants, enjoining them from draining seepage or surplus water from the lands irrigated by the defendant canal companies, or any or either of them, or the waters of the chain of lakes mention-

ed in the pleadings, or Decker's Lake, into the Surplus Canal or White Lake at a point above the head gate of plaintiff's canal, through their drain ditch or otherwise, and ordering said defendant canal companies to fill up said drain ditch, with costs of plaintiff against all of the defendants.

"(9) That the findings of fact, conclusions of law, and decree thereon, dated May 8, 1897, heretofore made and filed in this case, be set aside, and that the foregoing be substituted therefor, and in place thereof.

"Decree.    This cause having been regularly tried and submitted to this court on March 25, 1897, upon the equitable issues therein,—the question of damages having been reserved,—and on the 8th day of May, 1897, this court having rendered a judgment in favor of the said defendants and against the plaintiff, and a decree having been made in accordance therewith, and from which findings and decree the plaintiff appealed to the supreme court of the state of Utah; and a remittitur in this cause from said supreme court having been filed in this court, reversing the decision and decree heretofore made and filed herein, and directing that such findings and decree be set aside, and new ones made, in accordance with the findings of said supreme court:    Therefore, it is ordered, adjudged, and decreed, in accordance with the foregoing findings of fact and conclusions of law, that the above-named defendants, the Utah & Salt Lake Canal Company, the South Jordan Canal Company, the North Jordan Irrigation Company, and the county of Salt Lake, and the city of Salt Lake, them and each of them, their agents, servants, and employes, be, and they are hereby, perpetually enjoined from draining, or conducting any drainage, seepage, or surplus water from lands irrigated by the Utah & Salt Lake Canal Company, the South Jordan Canal Company, the North

Jordan Irrigation Company, or any or either of them, or of the waters of Haines, Hunter, Silver, Durst, Porter, Decker, or other lakes, or otherwise, into the Surplus Canal or White Lake, or into plaintiff's system at any point above the head gate of plaintiff's irrigating ditches in the Surplus Canal, and that the said Utah & Salt Lake Canal Company, the South Jordan Canal Company, and the North Jordan Irrigation Company, shall immediately and properly fill up the drain ditch from Decker's Lake to White Lake and the Surplus Canal, heretofore and now being used by them, and that a peremptory writ issue accordingly against all of said defendants. It is further ordered, adjudged, and decreed that the plaintiff have and recover all costs and disbursements against each or all of said defendants, taxed at $——, and that execution issue therefor."

MINER, J., and JOHNSON, District Judge, concur.